# STATE OF MICHIGAN

# COURT OF APPEALS

TYRONNA HOWARD (Deceased),

Plaintiff,

and

ANTONIO BLACKBURN,

Appellee,

v

MARK HOWARD,

Defendant-Appellant.

FOR PUBLICATION
May 19, 2015
9:00 a.m.

No.  323124
Wayne Circuit Court
Family Division
LC No.  06-607496-DM

Before:  TALBOT, C.J., and CAVANAGH and METER, JJ.

PER CURIAM.

Defendant appeals as of right an order granting custody of his minor children to his deceased ex-wife's brother, Antonio Blackburn.  We affirm.

Defendant and Tyronna Howard divorced on November 13, 2006.  They had three children, but only two minors are at issue here.  The judgment of divorce granted Tyronna and defendant joint legal custody, but Tyronna primary physical custody of the children with extensive parenting time to defendant.  Tyronna fell ill and passed away on August 31, 2013. Prior to her death, around April 2013, Tyronna and her children moved in with Blackburn.

On September 24, 2013, defendant filed an emergency ex parte motion to enforce the judgment of divorce and return the children to him.  Defendant alleged that he attempted to bring his children home after Tyronna's death, but Blackburn refused to return them.  The trial court set the matter for an expedited hearing on defendant's motion, ordered defendant to serve Blackburn, and ordered Blackburn to appear.

On October 1, 2013, Blackburn responded to defendant's motion, indicating that defendant suffered from brain tumors and multiple sclerosis, and lived in a one-bedroom apartment in an assisted living facility.  Consequently, when she fell ill, Tyronna entrusted the care and custody of her children with her brother, Blackburn.  Blackburn alleged that on

-1-

September 18, 2013, he filed petitions for guardianship and conservatorship over each of the children, and he requested that the trial court "maintain the status quo and allow the minor children to remain with [Blackburn] until the probate court makes a decision on [the] petitions."[1]

On October 4, 2013, the trial court held a hearing on defendant's motion. At the hearing, the trial court learned that defendant's sister, LaDawne Malone, had power of attorney for defendant, and she admitted that she "requested the ex parte motion." At that hearing, Malone stated that defendant "wants his custodial rights restored and the children returned to his house." When the trial court questioned Malone as to why defendant was not addressing the court himself, Malone indicated "he can't cognitively speak. He has multiple sclerosis. He is not deemed unfit. He is deemed disabled which there's a big difference." At that hearing, the trial court placed defendant under oath and asked him if he wanted his children to live with him. Defendant stated, "I want my children. I really do. I love my children. I do." However, when the trial court asked defendant if he was living in a one-bedroom assisted living facility, he could not answer, but instead, looked to Malone for help. Malone requested that the trial court adjourn the matter until she could retain an attorney, and the matter was adjourned.

After defendant retained an attorney, the trial court appointed a guardian ad litem for the children. Michelle Mack, the GAL, eventually gave her findings on the record, and both Blackburn's and defendant's counsels questioned Mack, but she was not sworn in as a witness. Mack interviewed each of the children alone, observed them at home and at school, and observed them visiting with defendant. Mack explained that the children love defendant, but they do not want to live with him as they felt that, due to defendant's medical conditions, they would be taking care of defendant rather than defendant taking care of them. When Mack questioned defendant, he was unable to tell her where the children went to school or where they lived. When Mack asked defendant how he would care for the children, he told her that the children "were big, [and] they could take care of themselves."

Defendant's counsel repeatedly argued that it was inappropriate for Blackburn to participate in the proceedings at all because Blackburn did not have standing in the matter. While the trial court agreed that Blackburn did not have standing, it refused defendant's requests for a directed verdict, mistrial, and objections on this ground. The trial court noted that it was authorized by the Child Custody Act to grant custody of the children to a third party, even one without standing, so long as it found that this was in the children's best interests.

At the evidentiary hearing on the best interest factors, defendant refused to put on witnesses, arguing that the parental presumption was in his favor, and there was no third party with standing that could rebut the presumption by clear and convincing evidence. The trial court then allowed Blackburn to testify in the proceedings and he was subject to cross-examination by defendant's counsel. No other witnesses were presented in this matter, and defendant did not testify on his own behalf.

---

[1] The record does not reflect whether Blackburn's petitions for guardianship and conservatorship were ever heard by the probate court.

After this hearing, the trial court engaged in a lengthy analysis under the best interest factors.[2]  The trial court found that factors (a), (b), (c), (d), (e), (g), (h), (j), and (l) favored Blackburn.  It found that factors (f) and (k) favored neither party.  It found zero factors in favor of defendant.  As to factor (l), the catch-all factor, the trial court detailed that the "most influential factor considered by this court to be relevant to this matter is fitness."  The trial court noted that because defendant did not take the stand or have any witnesses testify on his behalf, the trial court was left with its observations, which included that defendant was in a wheelchair, defendant raised his hand when his name was mentioned in court, and that defendant did not know his own address.  The court stated:  "Defendant's counsel rested on the notion that Defendant is their Dad and the kids must be automatically returned or given to him."  The court further stated:  "It is by no means this Court's intention to deprive Defendant of his children, however it is this Court[']s grave concern that Defendant is unable to provide for the care, safety, and welfare of his children." The court concluded that Blackburn established by clear and convincing evidence that awarding him custody was in the best interests of the minor children. This appeal followed.

Defendant first argues that the trial court impermissibly allowed Blackburn to participate in the proceedings and rebut the parental presumption owed to natural parents under MCL 722.25(1) because he did not have standing.  After review of this question of law, we disagree. See *Heltzel v Heltzel*, 248 Mich App 1, 28; 638 NW2d 123 (2001).

As our Supreme Court explained in *Ruppel v Lesner*, 421 Mich 559; 364 NW2d 665 (1984):

> The Child Custody Act does not create substantive rights of entitlement to custody of a child. Rather, it creates presumptions and standards by which competing claims to the right of custody are to be judged, sets forth procedures to be followed in litigation regarding such claims, and authorizes the forms of relief available in the circuit court.  While custody may be awarded to grandparents or other third parties according to the best interests of the child in an appropriate case (typically involving divorce), nothing in the Child Custody Act, nor in any other authority of which we are aware, authorizes a nonparent to create a child custody "dispute" by simply filing a complaint in circuit court alleging that giving custody to the third party is in the "best interests of the child."  [*Id*. at 565-566 (footnotes and citations omitted).]

Similarly, in *Bowie v Arder*, 441 Mich 23, 41; 490 NW2d 568 (1992), it was noted that the Child Custody Act may not be interpreted "as a statutory means by which any interested person has standing to request the circuit court to make a determination of a child's best interests with respect to the custody of that child."

_____

[2] Because defendant has not argued that the trial court's findings under the best interest factors were against the great weight of the evidence, we will not detail the trial court's findings.

This case, however, was initiated by defendant. Thus, contrary to defendant's repeated claims, whether Blackburn had standing was not an issue. Unlike in the cases defendant relies on in support of his arguments, here, Blackburn did not initiate this child custody dispute by filing a petition for custody of the minor children.[3] See *Bowie*, 441 Mich at 48-49; *Heltzel*, 248 Mich App at 30. Rather, defendant filed this action seeking judicial intervention after his ex-wife died, requesting that the court return his children who had been living at Blackburn's house. And defendant persistently argued that Blackburn could not participate in this proceeding and could present no evidence to contest defendant's request for physical custody of his children.

It is true that, as the natural parent, defendant was entitled to a parental presumption over Blackburn in this dispute, even though the children had been living with Blackburn. See *Hunter v Hunter*, 484 Mich 247, 264; 771 NW2d 694 (2009). That is, the presumption in favor of an established custodial environment set forth in MCL 722.27(1)(c), yields to the parental presumption set forth in MCL 722.25(1). But it does not follow that Blackburn was precluded from contesting the return of the children to defendant; the parental presumption may be rebutted. See *Hunter*, 484 Mich at 265. Once defendant filed this action, a "child custody dispute" arose because Blackburn had physical custody of the minor children. And the court had the right to award Blackburn custody of the children if certain circumstances existed. See, e.g., MCL 722.27(1)(a); *Hunter*, 484 Mich at 279; *In re Anjoski*, 283 Mich App 41, 62-63; 770 NW2d 1 (2009); *Bowie v Arder*, 190 Mich App 571, 573; 476 NW2d 649 (1991); *Hastings v Hastings*, 154 Mich App 96, 100-101; 397 NW2d 232 (1986).

Pursuant to MCL 722.25(1), if a custody dispute is between a parent and a third person, "the court shall presume that the best interests of the child are served by awarding custody to the parent or parents, *unless* the contrary is established by clear and convincing evidence." (Emphasis supplied.) By the plain language of the statute, a third party is entitled to present evidence for the purpose of contesting the parent's claim that the best interests of the child are served by awarding custody to the parent. Further, in *Heltzel*, 248 Mich App at 27, we held:

> [C]ustody of a child should be awarded to a third-party custodian instead of the child's natural parent only when the third person proves that all relevant factors, including the existence of an established custodial environment and all legislatively mandated best interest concerns within [MCL 722.23], taken together clearly and convincingly demonstrate that the child's best interests require placement with the third person.

Thus, again, it is clear that once a natural parent initiates a custody dispute with a third-party custodian, the third-party has the right to—and indeed must—present evidence in support of that party's claim that the child's best interests are served by the continued placement of the child

---

[3] The term "child custody dispute" is used broadly throughout the Child Custody Act and its meaning includes any action or situation involving the placement of a child. *Sirovey v Campbell*, 223 Mich App 59, 68; 565 NW2d 857 (1997) (citation omitted).

with that third party instead of the natural parent.[4] "[I]n any custodial dispute the child's best interests, described within MCL 722.23, must prevail." *Heltzel*, 248 Mich App at 27. Accordingly, defendant's argument that the trial court erred when it allowed Blackburn to participate in this proceeding and to present evidence in support of his claim that defendant should not have custody of the children is without merit.

Defendant also argues that the trial court erred when it ignored the parental presumption and conducted a best-interest hearing. We disagree that the trial court ignored the parental presumption. It is clear that the trial court gave proper weight to the presumption favoring defendant as the preferred custodian of the children; however, that presumption may be rebutted by clear and convincing evidence that custody with defendant was not in the best interests of the children. See *Hunter*, 484 Mich at 265. As our Supreme Court explained in *Bowie*, 441 Mich at 52, "the Legislature standardized the criteria for resolving child custody disputes by requiring the circuit court to evaluate eleven factors in making its determination of the best interests of a child." See also MCL 722.23. In this case, Blackburn had been entrusted with physical custody of the children and contested defendant's request for custody on the ground that such placement was not in the best interests of the children. To resolve the competing claims of Blackburn and defendant in this custody dispute, the trial court properly conducted a best-interests hearing. See *Frowner v Smith*, 296 Mich App 374, 386; 820 NW2d 235 (2012).

Defendant also argues that the trial court erred "when it failed to apply the parental presumption and forced him to carry the burden of persuasion throughout the proceedings against him." We disagree with defendant's characterization. As discussed above, a best-interest hearing was properly conducted and Blackburn was properly permitted to present evidence in an attempt to rebut the presumption that the children's best interests required physical custody with defendant. To the extent that defendant challenges the trial court's obvious concerns regarding defendant's fitness, such challenge is without merit. As noted in *Hunter*, 484 Mich App at 270, "a natural parent's fitness is an intrinsic component of a trial court's evaluation of the best interest factors in MCL 722.23." And "concerns about parental fitness are of paramount importance in custody determinations." *Id*. at 271. Here, the court noted defendant's obvious mental and physical deficits, as well as the fact that it was defendant's sister who was speaking for defendant and pursing this matter rather than defendant. The GAL also indicated that defendant did not know the name of the school that his children attended, where they lived, or the day of the week that they came to visit him. Further, when asked how he would care for the children, defendant told the GAL that the children "were big, [and] they

---

[4] We note and reject defendant's claim in his brief on appeal that "under the court's logic, virtually any third party who has a parent's children under his roof can sustain a claim for custody over a parent's objection." This statement is a mischaracterization of the third-party's burden. See *Heltzel*, 248 Mich App at 27.

could take care of themselves." The trial court's consideration of this and other evidence bearing on defendant's fitness was a properly focused inquiry on the best interests of the children. See *id*.

Affirmed.

/s/ Michael J. Talbot
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter