*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* EMV, Minor.

---

MICHAEL SARTOR, HEATHER SARTOR, MATTHEW JOHNSON, and ELIZABETH JOHNSON,

        Appellees,

v

RENEE JOHNSON,

        Appellant.

UNPUBLISHED
December 17, 2025
1:20 PM

No. 374795
Allegan Probate Court
LC No. 23-064494-GM

---

DWIGHT ELLIOTT VANDRUNEN,

    Plaintiff,

v

RENEE MARIE JOHNSON,

        Defendant-Appellant,

v

MICHAEL SARTOR and HEATHER SARTOR,

        Appellees.

No. 374796
Allegan Circuit Court
LC No. 2013-051630-DC

---

Before: M. J. KELLY, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

-1-

In these consolidated appeals,[1] defendant-appellant, Renee Johnson, appeals as of right the trial court orders: (1) terminating appellee's, Matthew Johnson's and Elizabeth Johnson's, guardianship of the child; and (2) granting appellees, Heather Sartor and Michael Sartor, sole legal and physical custody of the child. We affirm.

## I. FACTS

The child was born in December 2010. Defendant is the child's mother. Plaintiff, Dwight Elliot Vandrunen, now deceased, was the child's father. Defendant and plaintiff were never married. Matthew and Elizabeth are the child's maternal aunt and uncle, and Heather and Michael are the child's paternal aunt and uncle.

Beginning in 2013, plaintiff and defendant engaged in a near-constant, litigious custody battle. A brief history of this custody dispute is as follows: in 2013, the parties were awarded joint legal and physical custody; in 2015, plaintiff was awarded sole legal and physical custody, and defendant was awarded supervised parenting time; in March 2016, defendant's supervised parenting time was suspended; in October 2016, defendant was awarded joint legal custody and a mixture of supervised and unsupervised parenting time; in 2019, defendant's parenting time was reduced to one supervised visit every other week; in 2020, defendant's parenting time was increased to two supervised visits and one phone call a week; in 2021, plaintiff reported that defendant had unlawfully entered his home, and as a result, plaintiff and Heather sought and obtained personal protection orders (PPOs) against defendant; and in 2022, defendant was charged with an assault and battery involving an incident with staff at a supervised parenting time visit. During this string of events, defendant repeatedly, but unsuccessfully, moved for sole legal and physical custody as well as increased parenting time. Throughout this time, plaintiff alleged that defendant abused alcohol, had anger-management issues, and experienced severe mental-health concerns; at various points, the trial court ordered defendant to abstain from any alcohol or drugs beyond her prescriptions and engage in mental-health treatment.

In August 2023, a petition was filed requesting that Matthew and Elizabeth be granted guardianship of the child. The petition alleged that: plaintiff had left town, the child was living with relatives, the child had a chronic medical condition that required her to take daily medications and have IV infusions every four to six weeks, and plaintiff was currently a harm to himself and others. After the Department of Health and Human Services (DHHS) investigated and recommended the proposed guardianship, the trial court awarded guardianship to Matthew and Elizabeth. During this period, defendant vehemently opposed the guardianship and continued to request sole custody, which the trial court denied. In January 2024, the trial court terminated the guardianship because the child wanted to live with plaintiff and had in fact been living with plaintiff for a couple of weeks. Defendant opposed this transition and again, unsuccessfully requested sole custody.

In February 2024, Matthew and Elizabeth again petitioned for guardianship because plaintiff died, which the trial court temporarily granted. Again, the DHHS investigated and

---

[1] *In re Guardianship of EMV*, unpublished order of the Court of Appeals, entered April 8, 2025 (Docket Nos. 374795; 374796).

recommended this guardianship, noting that the child did not want to see or live with defendant, whom she last had last seen in December 2022, and last communicated with, via text message, in June 2023. Defendant moved for sole legal and physical custody following plaintiff's death, which the trial court denied, reasoning that there was no showing of irreparable injury because the guardianship had been initiated.

In April 2024, the Sartors petitioned for guardianship. The DHHS completed another investigation and recommended the guardianship, noting that: (1) the child wanted to live with the Sartors, who had been working closely with Matthew and Elizabeth; (2) the child did not want to live with defendant and had chosen to have no contact with her; and (3) Matthew and Elizabeth were supportive of the child's choice.

The trial court held a two-part guardianship, custody, and parenting-time hearing in June 2024 and November 2024.[2] Matthew, defendant's brother, testified that when plaintiff initially moved to remove the child from defendant's physical custody, he had paid for defendant's legal representation in an attempt to help her maintain custody, but over the years, defendant's mental health had declined and the child no longer wanted to live with her. Accordingly, Elizabeth and Matthew supported the guardianship. The Sartors testified that they had a close relationship with the child and ensured that all her needs were met. They further testified that the child was not ready to have a relationship with defendant. Defendant denied having issues with anger, alcohol, or drugs, and she stated that she had never attempted suicide despite evidence to the contrary. Defendant explained that she took medication for her mental health, but she did not think that counseling was necessary.

In January 2025, the trial court issued an oral ruling, acknowledging that in a custody dispute "between a parent and a third party, the court shall presume that the best interests of the child are served by awarding custody to the parent or parents unless the contrary is established by clear and convincing evidence . . . ." Accordingly, the burden was on the Sartors to demonstrate by clear and convincing evidence that custody with defendant was not in the child's best interests. First, the trial court determined that the child had an established custodial environment with the Sartors, but not with defendant. Next, the trial court considered the best-interest factors, determining that each factor favored the Sartors and that it was not in the child's best interests for defendant to have custody. Accordingly, the trial court: (1) terminated Elizabeth and Matthew's guardianship, and (2) awarded sole legal and physical custody to the Sartors. The trial court reserved parenting time until defendant began counseling. Defendant now appeals.

## II. CUSTODY AND GUARDIANSHIP

On appeal, defendant argues that the trial court erred by: (1) failing to apply a mandatory requirement, under MCL 722.26b, that a surviving parent be awarded custody; (2) requiring defendant to prove her parental fitness; (3) admitting the PPOs as evidence; (4) committing child abuse and forcing the child to suppress her feelings toward defendant; and (5) excluding defendant from medical decision-making. We disagree.

---

[2] The trial court also held an in-camera meeting with the child in November 2024.

## A. PRESERVATION AND STANDARD OF REVIEW

"Issues are considered preserved for appellate review if they are raised in the trial court and pursued on appeal." *Hein v Hein*, 337 Mich App 109, 114; 972 NW2d 337 (2021). "Appellate consideration is not precluded merely because a party makes a more sophisticated or more fully developed argument on appeal than was made in the trial court." *Id*. at 114-115. Because defendant "proceeded *in propria persona* during critical portions of the proceedings below . . . [her] pleadings during that period are entitled to more generous and lenient construction than they would be if [her] pleadings had been prepared by a lawyer." *Id*. at 115. Although defendant provides greater explanation of her arguments on appeal, most of her arguments were at least generally raised in the trial court; therefore, we choose to treat defendant's arguments as preserved for appellate review. See *id*. The only argument that is not preserved for appellate review—and is in fact waived—is defendant's challenge to the admission of the PPOs. Although defendant challenged the factual bases for the *issuance* of the PPOs in the trial court, *she* is the party that sought admission of the PPO at the trial court's hearing. "A party cannot stipulate to a matter and then argue on appeal that the resultant action was error. A party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." *LeFever v Matthews*, 336 Mich App 651, 670 n 3; 971 NW2d 672 (2021) (quotation marks and citation omitted). Accordingly, that issue is waived, and we decline to address it.

"We apply three standards of review in custody cases." *Phillips v Jordan*, 241 Mich App 17, 20; 614 NW2d 183 (2000).

> The great weight of the evidence standard applies to all findings of fact. In a child custody dispute, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. Specifically, we review under the great-weight-of-the-evidence standard the trial court's determination whether a party demonstrated proper cause or a change of circumstances. A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. An abuse of discretion, for purposes of a child custody determination, exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. Questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets or applies the law. [*Merecki v Merecki*, 336 Mich App 639, 644-645; 971 NW2d 659 (2021) (quotation marks and citations omitted).]

"This Court will defer to the trial court's credibility determinations, and the trial court has discretion to accord differing weight to the best-interest factors." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008).

## B. ANALYSIS

In a child-custody dispute, "the best interests of the child control." MCL 722.25(1). When the dispute is between a parent and a third party, "the court shall presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence." MCL 722.25(1).

On appeal, defendant cites to MCL 722.26b for the proposition that custody "shall be" with a surviving parent upon the other parent's death. But MCL 722.26b does not contain such a requirement. MCL 722.26b outlines procedures for guardians seeking custody of a child—it does not refer to situations in which the custodial parent dies or mandate the return of a child to a surviving parent.

More generally, defendant's argument is that she was entitled to custody of the child when plaintiff died, and, for this proposition, defendant relies on *Hunter v Hunter*, 484 Mich 247; 771 NW2d 694 (2009). In *Hunter*, 484 Mich at 251, the Michigan Supreme Court addressed whether the trial court erred by: (1) finding that the children's biological mother was an unfit parent, and (2) awarding custody of the children to their uncle and aunt. The Supreme Court remanded the case to the trial for further proceedings, stating that the trial "court shall not grant custody to [the aunt and uncle] unless [they] demonstrate by clear and convincing evidence that custody with [the children's mother] does not serve the children's best interests." *Id*. at 279. The Court further noted that "to make this showing, [the aunt and uncle] must prove that all relevant factors, including the existence of an established custodial environment and all legislatively mandated best interest concerns within MCL 722.23, taken together clearly and convincingly demonstrate that the child's best interests require placement with the third person." *Id*. (quotation marks, citation, and alteration omitted).

In this case, the trial court properly applied this burden and presumption, specifically noting the parental presumption and finding, after receiving extensive testimony from all parties, that there was clear and convincing evidence that custody with defendant did not serve the child's best interests. See *id*. Instead, the trial court found that each best-interest factor favored the Sartors, whom the child was bonded to and whom had the ability to provide for the child. See *id*. At the time of the trial court's decision, the child had not seen defendant in over two years. The trial court acknowledged that defendant cared for the child and had attempted to see her, but the record demonstrated that the child did not wish to live with defendant. Accordingly, defendant has not demonstrated that the trial court's findings were against the great weight of the evidence or that the trial court abused its discretion by awarding custody to the Sartors. See *Merecki*, 336 Mich App at 644-645.

Defendant relatedly argues that the trial court violated her fundamental rights by requiring her to prove her parental fitness. But the trial court did not find that defendant was unfit in this case, and it was not required to do so before awarding custody to the Sartors. See *Hunter*, 484 Mich at 279. Instead, the trial court properly focused on the child's best interests. See *id*. Notably, a trial court may consider evidence that bears on a parent's fitness as part of a best-interest inquiry. See *Howard v Howard*, 310 Mich App 488, 498; 871 NW2d 739 (2015). The trial court acknowledged that defendant had not had contact with the child in over two years, and during that time, the Sartors had been providing for the child. This was not, however, a presumption in favor of the third parties and did not violate defendant's rights.

-5-

Defendant further argues that the trial court committed child abuse under MCL 722.622(f), which simply defines "[c]hild" as "an individual under 18 years of age." MCL 722.622(g), however, defines "[c]hild abuse" as "harm or threatened harm to a child's health or welfare that occurs through nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, by a parent, a legal guardian, any other person responsible for the child's health or welfare . . . ." Defendant has not demonstrated that the child's placement outside of her care constitutes abuse or neglect by any party, or by the trial court. Instead, the record demonstrates that Elizabeth, Matthew, and the Sartors all had positive relationships with the child and were able to properly care for her.

Finally, defendant claims that her exclusion from decision-making about the child's medical care constitutes child endangerment and violates defendant's parental rights. But as previously stated, the trial court properly considered the child's best interests, including the child's health and medical needs, before granting sole legal and physical custody to the Sartors. The record demonstrates that the Sartors were meeting, and could continue to meet, the child's healthcare needs. There is no evidence that the child's medical needs were being neglected; in fact, there was evidence that the child's health had improved in the time since her visits with defendant had stopped. Accordingly, the trial court did not endanger the child or violate defendant's parental rights.

Affirmed.

/s/ Michael J. Kelly
/s/ James Robert Redford
/s/ Kathleen A. Feeney

-6-